# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE RAY,[1] | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00088-WKW-CSC |
| | ) | |
| JEFFERSON DUNN, | ) | |
| Commissioner, Alabama | ) | |
| Department of Corrections | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONDENT'S MOTION TO DISMISS, RESPONSE TO SHOW CAUSE ORDER, AND RESPONSE TO MOTION TO STAY

Steve Marshall
*Alabama Attorney General*

Richard Anderson*
*Alabama Assistant Attorney General*
 *Counsel of Record

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Tel: (334) 242-7300
Fax: (334) 353-3637
January 31, 2019                    randerson@ago.state.al.us

## EXECUTION SET FOR FEBRUARY 7, 2019

---

1. The spelling of the petitioner's surname has varied. He appears as "Dominique" in the Alabama Department of Corrections' records and on direct appeal, but as "Domineque" in his petition and as early as his state postconviction proceedings.

Alabama death row inmate Dominique Ray is scheduled to be executed on February 7, 2019, for the 1995 rape, robbery, and murder of Tiffany Harville. A fact that has been known to him since November 8, 2018, when the Alabama Supreme Court set his execution. Ray is currently pursuing a successive state postconviction petition through counsel. And yet, Ray waited until the afternoon of January 28—ten days before his execution—to file the present 42 U.S.C. § 1983 complaint through *different* counsel. Therein, he argues that the presence of the chaplain of Holman Correctional Facility, an employee of the Alabama Department of Corrections, in the execution chamber substantially burdens the exercise of his religious beliefs, in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and the First Amendment.

Ray's complaint, like most last-minute filings from condemned inmates, is little more than an attempt to delay his execution, and his RLUIPA claim is meritless. Unnecessary and unreasonable delay is an adequate ground for dismissing a §1983 action, particularly where, as here, the apparent purpose is to delay the execution. *Grayson v. Allen*, 491 F.3d 1318, 1325 (11th Cir. 2007). Still, the ADOC is willing to make a concession to Ray's religious beliefs and waive the presence of the chaplain from the execution chamber for his execution. At Ray's request, his imam or other chosen spiritual advisor will be allowed to witness the

execution from the viewing room a one of the witnesses for the condemned, as per usual.

## I.  Background

In the summer of 1995, Ray raped, robbed, and murdered fifteen-year-old Tiffany Harville. Her skeletonized remains were discovered during the bushhogging of a field in Dallas County a month after she disappeared. The codefendant in Ray's case, Marcus Owden, ultimately gave a full account of the events surrounding Harville's disappearance and death:

> Owden testified at [t]rial against the Defendant Ray that it was their intent to form a mob or a gang, and that they had intended to find Tiffany Harville for the purpose of having sex with her. Owden stated that he did not know Tiffany, but that Ray did and that it was Ray's idea to go and get Tiffany. Owden testified that they had talked about having sex with her before they went to her house to get her. On the evening of July 15, 1995, Owden and Ray picked Tiffany up and proceeded to take her to [the] Sardis community located in Dallas County, Alabama, on or near Highway 41. Owden stated that they had decided they were going to ask her for sex first, and if that didn't work, that they would take it. He described during his testimony how he and the Defendant Ray [had] had sex with her and how she [had] pleaded for help.
>
> Owden testified that Ray cut her throat and that he, Owden, cut her as well. He then described that they took part of her clothing along with her purse, which contained $6 or $7.[2]

Ray also made a statement admitting to Harville's rape and murder, though he

---

2. *Ray v. State*, 809 So. 2d 875, 879–80 (Ala. Crim. App. 2001).

attempted to portray Owden as the primary offender.[3]

Ray was convicted of two counts of capital murder on July 28, 1999, and the jury recommended death 11–1. His direct appeals concluded in 2002.[4] Ray filed a Rule 32 petition for state postconviction relief in February 2003, but after an evidentiary hearing, the petition was denied. The Alabama Court of Criminal Appeals affirmed, and the Alabama Supreme Court denied certiorari.[5]

Turning to the federal courts, Ray filed a petition for writ of habeas corpus in the Southern District of Alabama in May 2006. The district court denied the petition, and in January 2016, the Eleventh Circuit Court of Appeals affirmed.[6]

The State of Alabama moved for the Alabama Supreme Court to set Ray's execution date on August 6, 2018. Less than two months later, Ray filed a successive Rule 32 petition, which was dismissed on December 13.[7] On January 23, 2019, Ray filed an appeal in the Court of Criminal Appeals.[8] Five days later, through different counsel, Ray filed the present § 1983 petition.

--------

3. *Id.* at 880.
4. *Ray v. State*, 809 So. 2d 875 (Ala. Crim. App. 2001), *aff'd*, 809 So. 2d 891 (Ala. 2001); *see Ray v. Alabama*, 534 U.S. 1142 (2002) (mem.) (denying certiorari).
5. *Ray v. State*, 80 So. 3d 965 (Ala. Crim. App. 2011), *cert. denied*, 80 So. 3d 997 (Ala. 2011).
6. *Ray v. Ala. Dep't of Corrs.*, 809 F.3d 1202 (11th Cir. 2016); *cert. denied*, 137 S. Ct. 417 (2016) (mem.).
7. Order, Ray v. State, 27-CC-1997-000375.61 (Dallas Cty. Cir. Ct. Dec. 13, 2018), Doc. 67.
8. *See Ray v. State*, CR-18-0395 (Ala. Crim. App.).

## II.    The Respondent is willing to make certain concessions to Ray's religious beliefs.

Ray contends that the presence of the chaplain of Holman Correctional Facility in the execution chamber is a violation of his rights under RLUIPA and the First Amendment. The Respondent, Jefferson Dunn ("ADOC") disagrees with Ray's position—there is no constitutional violation in the presence of an ADOC employee observing an execution within the execution chamber. Still, as a concession to Ray, the ADOC is willing to waive the presence of the chaplain in the chamber during Ray's execution.

### A.    The role of the Holman chaplain

The institutional chaplain of Holman Correctional Facility is Chris Summers, who joined the ADOC in 1990. Since 1997, Chaplain Summers has witnessed nearly every execution conducted in the state of Alabama as part of his occupational duties. Like all ADOC employees involved in executions, the institutional chaplain is familiar with the technicalities of the execution protocol. During the execution, if the inmate requests prayer, Chaplain Summers will kneel at his side and pray with him. If the inmate does not wish pastoral care from him, then the chaplain remains standing unobtrusively by the wall. In no respect does the chaplain force his religious beliefs upon the inmate or prevent the inmate from practicing his own faith.

### B.      Ray's requests for religious accommodation

Ray claims to have made three requests to Holman Warden Cynthia Stewart:

1.  To have his imam present in the chaplain's place.

2.  To exclude the chaplain from the execution chamber.

3.  To not be subject to an autopsy.[9]

Ray's § 1983 petition abandons the third request but reiterates the first and second.[10]

As stated above, the ADOC is willing to accommodate Ray as to his second request by excluding Chaplain Summers from the execution chamber during Ray's execution. The ADOC is not, however, willing to allow Ray's spiritual advisor, who is not an ADOC employee, to take the ADOC employed institutional chaplain's place in the chamber.

As Ray notes, in the period shortly before his execution, a condemned inmate is permitted to meet with the spiritual advisor of his choosing in a cell near the chamber.[11] When the execution begins, the inmate's spiritual advisor may witness the execution from the viewing room designated for the inmate's relatives, friends, and members of the media, if the inmate so elects. A two-way window separates the viewing room from the chamber, and a curtain across the window is

_____

9. Doc. 1 ¶¶ 31–37.
10. Doc. 1 ¶¶ 47–61.
11. Doc. 1 ¶¶ 19–21.

retracted before the execution begins.

Chaplain Summers is a well-experienced ADOC employee who has witnessed dozens of executions. As the institutional chaplain, he is familiar with the functions of the execution team. If Ray wishes for him to be excluded from the chamber for Ray's execution, then the ADOC will honor that request, but the ADOC will not permit a non-ADOC employee, someone unfamiliar with the execution process and with the practices and safety concerns of the prison, to be in the chamber in the chaplain's place. Ray has directed this Court to no controlling federal authority, whether statutory or caselaw, requiring that an inmate be allowed the spiritual advisor of his choice—or any witness of his choice—*within* the execution chamber. Indeed, as shown below, allowing non-ADOC employees within the execution chamber would be incompatible with the compelling governmental interest in maintaining the safety and security of prison operations.

Again, the ADOC strongly disagrees with Ray's contention that its execution protocol violates his religious rights by having the prison chaplain stand in the chamber, either to pray with the condemned or to stand back as a silent witness. The State has a right to design its own execution protocol within constitutional limits, and placing an ADOC employee within the execution chamber to offer a last prayer with the inmate *if the inmate wishes it* offends neither the First Amendment nor RLUIPA. The fact that Ray would prefer to have

an assortment of clergy from which to choose does not render Alabama's protocol unconstitutional.[12]

In this instance, however, and despite Ray's untimely filing, the ADOC is willing to waive the chaplain's presence in chamber. If Ray so elects, his imam may observe the execution from the appropriate viewing room.

## III.   The ADOC's response to this Court's "Show Cause" order

On January 29, 2019, this honorable Court issued a "Show Cause" order directing the ADOC to respond to five issues (a–e) and eight questions (a–h). The ADOC responds as follows:

### A.   Issues (a–e):

Issues (a–c) concern whether Chaplain Summers's role on the execution team violates RLUIPA. Any possible RLUIPA concerns are mooted by the ADOC's agreement, set forth in Section II above, to waive Chaplain Summers's presence in the execution chamber. Likewise, issue (d) is moot. The State has never taken the position that Ray's spiritual advisor cannot witness his execution. Ray's chosen witnesses will be allowed to attend and view the execution in the same manner as any other inmate's.

---

12. *See generally Gregg v. Georgia*, 428 U.S 153, 174–75 (1976) ("But, while we have an obligation to insure that constitutional bounds are not overreached, we may not act as judges as we might as legislators.").

As for issue (e), the ADOC and the State of Alabama have a compelling governmental interest in maintaining safety and security in prison operations, including executions. Prison safety and security is a well-recognized compelling governmental interest.[13] The ADOC's compelling government interest in maintaining prison security is furthered by its policy of not allowing persons who are not ADOC employees and who do not have the requisite experience or security clearances into the execution chamber prior to the completion of the execution. This policy is the least restrictive means by which the ADOC can maintain the security and integrity of the execution proceedings.

The ADOC is willing to reasonably accommodate Ray's religious beliefs by allowing his chosen spiritual advisor to witness his execution in the same manner that other inmates have been allowed to have witnesses of their choice—whether spiritual advisors, relatives, or friends—attend executions. These witnesses are subject to the same security precautions as other witnesses, including any representative of the victim. Among those precautions is the sequestration of all witnesses in rooms adjacent to the execution chamber, but with two-way windows looking onto the chamber.

The ADOC also accommodates Ray's spiritual beliefs by allowing him

---

13. *See, e.g.*, *Muhammad v. Sapp*, 388 F. App'x 892, 895 (11th Cir. 2010) (applying RLUIPA); *Fawaad v. Jones*, 81 F.3d 1084, 1086 (11th Cir. 1996) (applying the Religious Freedom Restoration Act).

access to a Koran and visitation by his chosen spiritual advisor in the period immediately prior to the execution day and prior to his removal to the execution chamber. ADOC policies further accommodate Ray's spiritual beliefs by allowing final visitation with his spiritual advisor until approximately 5:15 p.m. on the day of execution. Because the ADOC's accommodations will allow Ray to exercise his spiritual beliefs without substantial burden on the day of his execution, this Court should dismiss Ray's complaint.[14]

The following are Commissioner Dunn's responses to the Court's inquiries:

**B.    Questions (a–h):**

(a)    Chaplain Summers is a state employee.

(b)    Chaplain Summers is a Christian.

(c)    To the Commissioner's knowledge, the ADOC has not previously accommodated any prisoner's request that the institutional chaplain not be present in the execution chamber.

(d)    During Commissioner Dunn's tenure at ADOC, and to his knowledge, the State has not executed a prisoner by lethal injection without a chaplain attending the execution.

(e)    The Commissioner has no personal knowledge that the spiritual advisor requested by Ray is a Muslim imam.  The Commissioner

---

14. *Muhammad*, 388 F. App'x at 895.

acknowledges that legal filings state that the spiritual advisor requested by Ray is a Muslim imam.

(f)     The Commissioner has no personal knowledge of whether the requested spiritual advisor has previously met with Ray.

(g)     Ray will be allowed visitation with his chosen spiritual advisor on the day of execution.

(h)     The Commissioner has no personal knowledge of the sincerity of Ray's religious beliefs but does not dispute the sincerity of Ray's religious beliefs.

## C.     Written Policies and Procedures

In accordance with paragraph 4 of this Court's order, Respondent has attached a redacted document, including relevant portions that contain written policies for religious accommodations to death row inmates, to be filed under seal.

## IV.     A stay is not warranted in this matter.

Ray's motion for a stay of execution is premised on his claim that the State of Alabama "made a policy decision to place a Christian chaplain in the execution chamber with Mr. Ray in violation of Mr. Ray's freedom of religion."[15] He asks this Court to intervene to "allow him to continue his challenge to the forced

---

15. Doc. 4 at 2.

presence of a Christian chaplain in the execution chamber."[16] A stay of execution is "an equitable remedy," and this extraordinary and drastic remedy "is not available as a matter of right."[17] A stay may be granted "only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest."[18]

Ray cannot show a substantial likelihood of success on the merits because, as shown above, the merits are almost entirely moot. The ADOC has agreed to waive the presence of the institutional chaplain in the execution chamber. Consequently, "Ray's Muslim spiritual advisor" will not be "displaced by the Christian Chaplain."[19]

To the extent that Ray claims that the exclusion of his chosen spiritual advisor from the execution chamber itself is a substantial burden on his free exercise of religion, that policy clearly is the least restrictive means of furthering a compelling state interest. As shown above, the State of Alabama and the ADOC have a legitimate and compelling governmental interest in maintaining the security and integrity of the execution process. There is no less restrictive means to ensure

---

16. *Id.* at 1.
17. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).
18. *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th. Cir. 2011).
19. Doc. 4 at 3.

the security and integrity of the execution process than by restricting physical access to the execution chamber. That compelling governmental interest is entirely inconsistent with allowing an inmate to designate persons who are not ADOC employees and do not possess the requisite training, experience, or security clearances to be present in the execution chamber itself. The ability of the State and the ADOC to restrict physical access to the execution chamber to persons with the proper experience, training, and background does not offend either RLUIPA or the First Amendment. Consequently, Ray can show no substantial likelihood of success on this aspect of his claim.

Further, Ray is not entitled to a stay because granting the stay will cause damage to the opposing party (the State of Alabama) and will be adverse to the public interest. Ray was properly convicted for a capital murder he committed over twenty years ago,[20] and his lawful sentence has been long delayed.

The State of Alabama and the victims of Ray's crime have an interest in seeing Ray held accountable for his horrific rape and murder of fifteen-year-old Tiffany Harville. Ray's claims in his § 1983 complaint do not outweigh this interest, particularly given that the accommodations agreed to by the State and the ADOC. Therefore, because Ray has failed to meet the requirements for a stay, his request should be denied.

---

20. *Ray*, 809 So. 2d 875 (Ala. Crim. App. 2001), *aff'd*, 809 So. 2d 891 (Ala. 2001).

## CONCLUSION

As the ADOC is willing to make appropriate concessions to Ray's religious beliefs and waive the presence of the Holman chaplain in the execution chamber, this Court should dismiss Ray's last-minute § 1983 action. Further, Ray has not shown that he is entitled to a stay of execution, and his motion should be denied.

Respectfully submitted,

Steve Marshall
*Alabama Attorney General*

**_s/ Richard Anderson_**
Richard Anderson
*Assistant Attorney General*

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: **Spencer J. Hahn** and **John Anthony Palombi.**

*s/ Richard Anderson*
Richard Anderson
*Assistant Attorney General*

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
randerson@ago.state.al.us

16